UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT M. CESTARI,

Plaintiff,

-against-

THE BANCORP, INC.,

Defendants.

Index No.

**COMPLAINT**
**Jury Trial Demanded**

Plaintiff Robert M. Cestari, by and through his undersigned attorneys, Hoguet Newman

Regal & Kenney, LLP, alleges against Defendant The Bancorp, Inc., as follows:

### NATURE OF THE ACTION

1.      In violation of the New York Labor Law and in breach of their agreements,

Defendant The Bancorp terminated Plaintiff Robert M. Cestari's employment as Senior Vice

President and Head of Commercial Mortgage Backed Securitization Floating Rate Program on

pretextual grounds and failed to pay him his earned wages.  Mr. Cestari was promised but never

fully paid his earned and promised bonus for 2016 and The Bancorp reneged on its payment to

Mr. Cestari of hundreds of thousands of dollars owed to him for his work relating to the sale of

certain assets of the Company.  On information and belief, The Bancorp's decision to terminate

Mr. Cestari was an effort to avoid paying Mr. Cestari amounts owing to him as a part of an

overall scheme to downsize in advance of potentially selling The Bancorp.

### THE PARTIES

2.      Plaintiff Robert M. Cestari resides at 145 East 92nd Street, Apt. 11B, New York,

New York 10128.

3.      On information and belief, Defendant The Bancorp, Inc. is a corporation

organized under the laws of Delaware with a principal place of business at 409 Silverside Road,

Wilmington, Delaware, 19809. The Bancorp also has offices at 712 5th Avenue, New York, New York 10019.

<strong>JURISDICTION AND VENUE</strong>

4.      This Court has jurisdiction pursuant 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred within the Southern District of New York.

<strong>FACTUAL BACKGROUND</strong>

6.      Mr. Cestari began working for The Bancorp full time in 2014 as a consultant and then as an employee in or around September of 2015. During that time he worked out of The Bancorp's New York office with an annual salary of $300,000. Mr. Cestari also received a sign-on bonus of $75,000.

7.      His position was Senior Vice President and Head of Commercial Mortgage Backed Securitization Floating Rate Program from September 2015 until his termination on or around March 8, 2017.

8.      During 2015, while as a consultant and then as a full-time employee, Mr. Cestari worked on, among other things, a commercial loan originating program. As part of this work, he was tasked with issuing a securitization of certain of those loans, which was set up to be issued in July 2015. Yet, as a result of The Bancorp's delay in filing its 10K and the market adjustments during that time period, Mr. Cestari was unable to issue the securitization when he wanted and on favorable terms. The Bancorp told Mr. Cestari it would not negatively impact

him or his bonus, yet he received only $200,000 of the $400,000 bonus he earned, along with an additional bonus of $75,000 to be paid in December 2016.

9.      Throughout his employment, Mr. Cestari was an exemplary employee.  In fact, in December of 2016, Daniel Cohen, the Chairman of The Bancorp and to whom Mr. Cestari reported, told Mr. Cestari that he added significant value to the Bank and that he would be its highest paid employee in the real estate group.  During that conversation, Mr. Cohen also told Mr. Cestari that his promised bonus for 2016 would be $800,000, bringing his total compensation for 2016 to $1.1 million.

10.     In recognition of Mr. Cestari's exceptional performance, in February 2017 The Bancorp paid Mr. Cestari $200,000 of his 2016 bonus in cash and issued him a stock grant of 39,525 shares, valued at approximately $200,000, for a total of $400,000 of the $800,000 promised bonus.  The stock grant would vest in equal installments over the subsequent three years.  Mr. Cestari understood that the remaining $400,000 of his promised 2016 bonus would be paid when the rest of the Real Estate group was paid, usually in March 2017.

11.     In addition to his normal tasks of heading the floating rate program at The Bancorp, Mr. Cestari also entered into an oral agreement for compensation with Mr. Cohen regarding two distinct transactions that fell outside the scope of Mr. Cestari's regular responsibilities concerning The Bancorp's fixed rate program: selling loans in a Wells Fargo securitization of fixed rate assets (the "Wells Fargo Securitization") and the sale of a $200 million portfolio of fixed rate assets (the "Fixed Rate Portfolio Sale").

12.     For the Wells Fargo Securitization, Mr. Cestari and Mr. Cohen reached an agreement in August 2016 that he would receive a commission of 40% of the excess profit

received by The Bancorp by virtue of selling assets into the Wells Fargo Securitization above the two points it expected from the sale of the loans.

13.    Mr. Cestari effectuated the sale of the assets in the fall of 2016 that netted The Bancorp approximately $2.4 million dollars in profit.  The securitization resulted in the loans being sold for a five point profit, entitling Mr. Cestari to 40% of the three points above the two that The Bancorp is achieving on the rest of the portfolio.  As a result, Mr. Cestari was entitled to a commission of approximately $600,000.  The Bancorp never paid Mr. Cestari the commission promised to him for this transaction.

14.    Then in early February 2017, Mr. Cestari worked on the Fixed Rate Portfolio Sale.  For this transaction, Mr. Cestari and Mr. Cohen agreed he would be paid half a point as a broker's fee.  Mr. Cestari arranged for the sale of $143 million of the fixed rate assets to Silverpeak.  As a result of Mr. Cestari's work, The Bancorp again netted millions of dollars in profit, and accordingly, Mr. Cestari was entitled to a commission, this time amounting to approximately $500,000.  The Bancorp never paid Mr. Cestari the commission promised to him for this transaction.

15.    On information and belief, during this time in late 2016 and during 2017, The Bancorp was considering its sale and was in the process of downsizing.  As part of this downsizing, The Bancorp decided to shed itself of Mr. Cestari and avoid paying him the more than $1 million owed to him.

16.    On information and belief, rather than pay Mr. Cestari the amounts owed to him, i.e. his commissions on the Wells Fargo Securitization and Fixed Rate Portfolio Sale and his earned bonus payments that had not yet been paid to him, The Bancorp fabricated a pretextual basis for Mr. Cestari's termination: his use of the corporate credit card for personal transactions.

17.     As an employee, The Bancorp issued Mr. Cestari a corporate American Express card for company-related purchases.

18.     From time to time, Mr. Cestari used the corporate American Express card for personal purchases, for which he would be asked to reimburse The Bancorp and which he would do.  The personal transactions were infrequent and in small amounts.

19.     On or around February 23, 2017, Mr. Cestari received an email from the new Chief Operating Officer of The Bancorp regarding expenses.

20.     Mr. Cestari responded promptly to the email requesting his expense information, but also noted that he would need some additional time to track down receipts and other information concerning some of the expenses.  On March 8, 2017, before he could provide the requested information, The Bancorp terminated Mr. Cestari without notice or severance.

21.     Mr. Cestari was never informed that using the company-issued American Express card for personal transactions was a violation that would result in his termination.  And at no time did Mr. Cestari ever refuse to reimburse The Bancorp for the minimal personal expenses incurred on his company credit card.

**FIRST CAUSE OF ACTION**
**(Failure to Pay Wages - Commissions)**

22.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.     In 2016 and 2017, Mr. Cestari and The Bancorp entered into commission agreements concerning his assistance in the Wells Fargo Securitization and the Fixed Rate Loan Portfolio transactions (the "Commission Agreements").

24.     During that time period and until his termination, Mr. Cestari was considered a "Commission salesman" under New York Labor Law § 190(6).

5

25.     Mr. Cestari performed as required under the Commission Agreements and facilitated the sale of those portfolios' assets.

26.     As a result of Mr. Cestari's work pursuant to the Commission Agreements, The Bancorp netted millions of dollars in profit.

27.     Mr. Cestari was accordingly entitled to a percentage of those profits as his commission, amounting to $600,000 for the Wells Fargo Securitization and approximately $500,000 for his work related to the sale of the Fixed Rate Loan Portfolio.

28.     The Bancorp willfully failed to pay Mr. Cestari the commissions owing to him related to both the Wells Fargo Securitization transaction and the Fixed Rate Loan Portfolio transaction.

29.     The Bancorp's willful refusal to pay the earned commissions constitutes a violation of New York Labor Law §§ 191 and 193, harming Mr. Cestari in an amount to be determined at trial, but in no event less than $1.1 million.

30.     The Bancorp's actions also entitle Mr. Cestari to the remedies provided in New York Labor Law § 198(1-a), including but not limited to reasonable attorneys' fees and liquidated damages amounting to 100% of the total amount of wages due, i.e. $1.1 million.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

31.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 30 of the Complaint as if fully set forth herein.

32.     In the alternative, Mr. Cestari and The Bancorp entered into the Commission Agreements in 2016 and 2017.

6

33.     Mr. Cestari performed as required under the Commission Agreements by facilitating the sale of the assets underlying the Wells Fargo Securitization and the Fixed Rate Loan Portfolio.

34.     The Bancorp received millions of dollars in profit as a result of Mr. Cestari's performance under the Commission Agreements.

35.     Pursuant to the terms of the Commission Agreements, Mr. Cestari is entitled to a $600,000 commission for the Wells Fargo Securitization and $500,000 commission for the Fixed Rate Loan Portfolio.

36.     The Bancorp has refused to pay any amounts to Mr. Cestari pursuant to the Commission Agreements in breach of those agreements.

37.     The Bancorp's actions have resulted in Mr. Cestari being harmed in an amount to be determined at trial, but in no event less than $1.1 million.

### THIRD CAUSE OF ACTION
### (Failure to Pay Wages – Vested Bonus Amounts)

38.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     From as early as 2014, Mr. Cestari performed as an employee of The Bancorp.

40.     As part of his employment, Mr. Cestari was provided with bonus amounts to be paid over time.

41.     These bonus amounts were promised to Mr. Cestari prior to his departure in or around March 2017.

42.     Mr. Cestari was awarded an $800,000 bonus for 2016, of which Mr. Cestari has received only $200,000 in cash and approximately $200,000 in equity.  The Bancorp has refused to pay Mr. Cestari the additional $400,000 it owes to him.

43.     Mr. Cestari was also awarded an additional payment of $75,000 in December 2015, which was earned and would be paid in December 2016.  The Bancorp has refused to make payment of this additional amount.

44.     The Bancorp's willful refusal to pay such amounts of earned wages constitutes a violation of New York Labor Law §§ 191 and 193, harming Mr. Cestari in an amount to be determined at trial, but in no event less than $475,000

45.     The Bancorp's actions also entitle Mr. Cestari to the remedies provided in New York Labor Law § 198(1-a), including but not limited to reasonable attorneys' fees and costs and liquidated damages amounting to 100% total amount of wages due, i.e. $475,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment and grant the following relief:

a.     On the first cause of action, an amount to be determined at trial, but in no event less than $1,100,000 with interest as permitted by law, and an amount equaling 100% of the wages that The Bancorp willfully failed to pay;

b.     On the second cause of action, an amount to be determined at trial, but in no event less than $1,100,000 with interest as permitted by law;

c.     On the third cause of action, an amount to be determined at trial, but in no event less than $475,000 with interest as permitted by law;

d.     an award of costs and expenses of this action together with reasonable attorneys' fees; and

e.     such other and further relief as this Court deems just and proper.

8

<u>**JURY DEMAND**</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Robert Cestari hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
  May 30, 2017

HOGUET NEWMAN REGAL & KENNEY, LLP

By: _____
  Richard M. Reice
  Damian R. Cavaleri
  Jennifer B. Schoch

  10 East 40th Street, 35th Floor
  New York, NY 10016
  Phone: 212-689-8808

  *Attorneys for Plaintiff Robert M. Cestari*