**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x

**ROBERT M. CESTARI**

**Plaintiff,**

**v.**

**THE BANCORP, INC.,**

**Defendant.**

**ANSWER TO AMENDED**
**COMPLAINT WITH**
**<u>COUNTERCLAIMS</u>**

**Case No. 1:17-cv-04054-VM**

----------------------------------------------------------------------x

Defendant The Bancorp, Inc. (hereinafter referred to as "The Bancorp") by its attorneys, Cozen O'Connor, hereby answer the allegations in Plaintiff's Amended Complaint as follows[1]:

**<u>NATURE OF THE ACTION</u>**

1.      The Bancorp admits that Plaintiff was Senior Vice President and Head of Commercial Mortgage Backed Securitization Floating Rate Program while employed at The Bancorp and that he was terminated, but specifically denies that The Bancorp violated the New York Labor Law or breached any agreements with Plaintiff, and otherwise denies the allegations contained in Paragraph 1 of the Amended Complaint.

2.      The Bancorp denies the allegations contained in Paragraph 2 of the Amended Complaint.

**<u>THE PARTIES</u>**

3.      The Bancorp denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Amended Complaint.

4.      The Bancorp admits the allegations of Paragraph 4 of the Amended Complaint.

---

[1] Plaintiff was employed by The Bancorp Bank, a wholly-owned subsidiary of The Bancorp, Inc.  The Bancorp, Inc. responds to the allegations as The Bancorp Bank.

## JURISDICTION AND VENUE

5.      Paragraph 5 of the Amended Complaint states conclusions of law to which no response is required, however, to the extent a response is deemed required, The Bancorp admits the allegations contained in Paragraph 5.

6.      Paragraph 6 of the Amended Complaint states conclusions of law to which no response is required, however to the extent a response is required, The Bancorp admits that venue is properly laid in this District, and otherwise admits the allegations contained in Paragraph 6.

## FACTUAL BACKGROUND

7.      The Bancorp admits that Plaintiff began working for The Bancorp full time in 2014 as a consultant and then as an employee in or around September 2015 as alleged in the first sentence of Paragraph 7 of the Amended Complaint.  The Bancorp further admits that at the time Plaintiff was hired as an employee in or around September 2015, he worked out of The Bancorp's New York office with an annual salary of $300,000 as alleged in the second sentence of Paragraph 7, and that he received a sign-on bonus of $75,000 as alleged in the third sentence of Paragraph 7.

8.      The Bancorp admits the allegations contained in Paragraph 8 of the Amended Complaint.

9.      The Bancorp admits that during 2015, while a consultant and then as a full-time employee, Plaintiff worked on, among other things, a commercial loan originating program as alleged in Paragraph 9 of the Amended Complaint.  The Bancorp also admits that in 2015 Plaintiff was tasked with issuing a securitization of certain loans, but denies the remaining allegations in the second sentence of Paragraph 9.  The Bancorp otherwise denies the allegations contained in Paragraph 9 of the Amended Complaint.

10.     The Bancorp denies the allegations contained in Paragraph 10 of the Amended Complaint.

11.     The Bancorp admits that Plaintiff received a bonus in February 2017 of $200,000 in cash, and that in February 2017, he was issued a grant of restricted stock of 39,525 shares that was subject to certain terms and conditions, including Plaintiff's remaining employed with The Bancorp.  The Bancorp otherwise denies the allegations of the first sentence of Paragraph 11 of the Amended Complaint.  The Bancorp admits that these shares were to vest in subsequent years starting in February 2018 as alleged in the second sentence of Paragraph 11.  The Bancorp denies knowledge or information sufficient to form a belief as to what Plaintiff "understood" about any 2016 bonus, and otherwise denies the remaining allegations contained in Paragraph 11.

12.     The Bancorp denies the allegations contained in Paragraph 12 of the Amended Complaint.

13.     The Bancorp denies the allegations contained in Paragraph 13 of the Amended Complaint.

14.     The Bancorp denies the allegations contained in Paragraph 14 of the Amended Complaint.

15.     The Bancorp denies the allegations contained in Paragraph 15 of the Amended Complaint.

16.     The Bancorp admits that, as part of his regular job duties, Plaintiff performed some work in connection with a sale of a portfolio of fixed rate assets in February 2017 to Silverpeak, as alleged in the first and third sentences of Paragraph 16 of the Amended Complaint.  The Bancorp otherwise denies the remaining allegations contained in Paragraph 16.

17.     The Bancorp denies the allegations contained in Paragraph 17 of the Amended Complaint.

18.     The Bancorp denies the allegations contained in Paragraph 18 of the Amended Complaint.

3

19.    The Bancorp admits the allegations contained in Paragraph 19 of the Amended Complaint.

20.    The Bancorp admits that Plaintiff used his corporate American Express card for personal purchases, and that he was asked to reimburse The Bancorp for these purchases, but otherwise denies the allegations in the first sentence of Paragraph 20 of the Amended Complaint. The Bancorp further admits that these personal transactions added up over time to the total of thousands of dollars, but otherwise denies the allegations contained in the second sentence of Paragraph 20.

21.    The Bancorp admits that Plaintiff received an email in February 2017 regarding expenses, but otherwise denies the allegations contained in Paragraph 21 of the Amended Complaint.

22.    The Bancorp admits that Plaintiff was terminated on March 8, 2017 without notice or severance, but otherwise denies the allegations contained in Paragraph 22 of the Amended Complaint.

23.     The Bancorp denies the allegations contained in Paragraph 23 of the Amended Complaint.

24.    The Bancorp denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Amended Complaint.

25.    The Bancorp admits that Mr. Wechsler contacted an employee at Oaktree Capital Management ("Oaktree") in or around May or June 2017 after Oaktree notified Mr. Wechsler that Plaintiff was sending a document of The Bancorp to Oaktree, but otherwise denies the allegations contained in Paragraph 25 of the Amended Complaint.

26.     The Bancorp admits that Mr. Wechsler contacted an employee at Oaktree and told the employee that Plaintiff was terminated for cause, but otherwise denies the allegations contained in Paragraph 26 of the Amended Complaint.

27.     The allegations of Paragraph 27 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp specifically denies that any information conveyed by Mr. Wechsler was false, and otherwise denies the allegations of Paragraph 27.

28.     The Bancorp denies knowledge or information sufficient to form a belief as to why Plaintiff was not offered a position at Oaktree, and otherwise denies the allegations contained in Paragraph 28 of the Amended Complaint.

29.     The Bancorp denies the allegations contained in Paragraph 29 of the Amended Complaint.

30.     The Bancorp denies the allegations contained in Paragraph 30 of the Amended Complaint.

**FIRST CAUSE OF ACTION**
**[Failure to Pay Wages - Commissions]**

31.     The Bancorp repeats each and every response to the allegations contained in Paragraphs 1 through 30 as though fully set forth here.

32.     The Bancorp denies the allegations contained in Paragraph 32 of the Amended Complaint.

33.     The allegations of Paragraph 33 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

34.     The Bancorp denies the allegations contained in Paragraph 34 of the Amended Complaint.

35.     The Bancorp denies the allegations contained in Paragraph 35 of the Amended Complaint.

36.     The Bancorp denies the allegations contained in Paragraph 36 of the Amended Complaint.

37.     The Bancorp denies the allegations contained in Paragraph 37 of the Amended Complaint.

38.     The allegations of Paragraph 38 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

39.     The Bancorp denies the allegations contained in Paragraph 39 of the Amended Complaint.

## SECOND CAUSE OF ACTION
### [Breach of Contract]

40.     The Bancorp repeats each and every response to the allegations contained in Paragraphs 1 through 39 as though fully set forth here.

41.     The Bancorp denies the allegations contained in Paragraph 41 of the Amended Complaint.

42.     The Bancorp denies the allegations contained in Paragraph 42 of the Amended Complaint.

43.     The Bancorp denies the allegations contained in Paragraph 43 of the Amended Complaint.

44.     The Bancorp denies the allegations contained in Paragraph 44 of the Amended Complaint.

45.     The Bancorp denies the allegations contained in Paragraph 45 of the Amended Complaint.

46.     The Bancorp denies the allegations contained in Paragraph 46 of the Amended Complaint.

### THIRD CAUSE OF ACTION
### [Failure to Pay Wages – Vested Bonus Amounts]

47.     The Bancorp repeats each and every response to the allegations contained in Paragraphs 1 through 46 as though fully set forth here.

48.     The Bancorp denies the allegations contained in Paragraph 48 of the Amended Complaint, and avers that the allegations are vague and ambiguous.

49.     The Bancorp admits the allegations contained in Paragraph 49 of the Amended Complaint.

50.     The Bancorp admits that Plaintiff was awarded certain conditional cash and stock bonuses prior to his termination in March 2017, and further asserts that all earned bonuses were paid, but otherwise denies the allegations contained in Paragraph 50 of the Amended Complaint.

51.     The Bancorp admits that Plaintiff received a bonus in February 2017 of $200,000 in cash, and that in February 2017, he was issued a grant of restricted stock of 39,525 shares that was subject to certain terms and conditions that Plaintiff failed to meet, but otherwise denies the allegations of the first sentence of Paragraph 51 of the Amended Complaint.  The Bancorp otherwise denies the remaining allegations contained in Paragraph 51.

52.     The Bancorp denies the allegations contained in Paragraph 52 of the Amended Complaint.

53.     The allegations of Paragraph 53 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

54.     The Bancorp denies the allegations contained in Paragraph 54 of the Amended Complaint.

## FOURTH CAUSE OF ACTION
## [Defamation Per Se]

55.    The Bancorp repeats each and every response to the allegations contained in Paragraphs 1 through 54 as though fully set forth here.

56.    The Bancorp admits that Mr. Wechsler contacted an employee of Oaktree in or around May or June of 2017 after Oaktree notified Mr. Wechsler that Plaintiff was sending a document of The Bancorp to Oaktree, but otherwise denies the allegations contained in Paragraph 56.

57.    The Bancorp denies the allegations contained in Paragraph 57 of the Amended Complaint.

58.    The allegations of Paragraph 58 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

59.    The Bancorp denies knowledge or information sufficient to form a belief as to why Plaintiff was not offered a position at Oaktree, and otherwise denies the allegations contained in Paragraph 59 of the Amended Complaint.

60.    The Bancorp denies the allegations contained in Paragraph 60 of the Amended Complaint.

61.    The allegations of Paragraph 61 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

62.    The Bancorp denies the allegations contained in Paragraph 62 of the Amended Complaint.

## FIFTH CAUSE OF ACTION
## [Tortious Interference with Business Relations]

63.     The Bancorp repeats each and every response to the allegations contained in Paragraphs 1 through 62 as though fully set forth here.

64.     The Bancorp admits that it was aware that Plaintiff was interviewing for a position at Oaktree, but otherwise denies knowledge or information sufficient to form a belief as to the allegations in Paragraph 64 of the Amended Complaint.

65.     The Bancorp denies the allegations contained in Paragraph 65 of the Amended Complaint.

66.     The Bancorp denies knowledge or information sufficient to form a belief as to why Plaintiff was not offered a position at Oaktree.

67.     The Bancorp denies the allegations contained in Paragraph 67 of the Amended Complaint.

68.     The Bancorp denies the allegations contained in Paragraph 68 of the Amended Complaint.

69.     The Bancorp denies the allegations contained in Paragraph 69 of the Amended Complaint.

70.      The allegations of Paragraph 70 of the Amended Complaint constitute conclusions of law to which no responsive pleading is required.  To the extent any reply is required, The Bancorp denies the allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

71.     The Amended Complaint, and each and every cause of action it contains, fails to state a claim on which relief can be granted.

**Second Affirmative Defense**

72.     Plaintiff's damages claims are barred in whole or in part by his failure to mitigate damages.

**Third Affirmative Defense**

73.     Plaintiff's claims are barred in whole or in part because The Bancorp has paid Plaintiff all monies due to him.

**Fourth Affirmative Defense**

74.     Plaintiff's claims are barred in whole or in part by the doctrines of laches, waiver, estoppel and/or avoidable consequences.

**Fifth Affirmative Defense**

75.     Plaintiff's claims are barred in whole or in part by the statute of frauds.

**Sixth Affirmative Defense**

76.     Plaintiff's claims are barred in whole or in part by the doctrine of offset or set off.

**Seventh Affirmative Defense**

77.     Plaintiff's claims are barred by the faithless servant doctrine.

**Eighth Affirmative Defense**

78.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

**Ninth Affirmative Defense**

79.     Plaintiff's defamation claim is barred as any statements by The Bancorp employees to the alleged third parties were true and therefore cannot form the basis of a defamation action.

**Tenth Affirmative Defense**

80.     Plaintiff's defamation claim is barred by the qualified privilege doctrine.

## Eleventh Affirmative Defense

81.     Plaintiff's defamation claim is barred in that any employees who allegedly provided statements about Plaintiff to third parties were not acting as agents of The Bancorp and/or were acting outside the scope of their employment when they made those statements.

## Twelfth Affirmative Defense

82.     Plaintiff's claims are barred in whole or in part by failure of consideration.

## COUNTERCLAIMS AGAINST PLAINTIFF

## FACTS COMMON TO ALL COUNTERCLAIMS

1.     These counterclaims arise from the only reason for Counterclaim Defendant Robert M. Cestari's ("CC-Defendant") termination – his violation of Counterclaim Plaintiff The Bancorp, Inc.'s ("The Bancorp") policies, and his knowing theft from a federally-regulated bank through the use of his The Bancorp-issued corporate American Express card to charge thousands of dollars in personal expenses while falsely representing to The Bancorp that the charges were for business purposes.

2.     The Bancorp is a financial holding company regulated by the Federal Reserve Bank of Philadelphia and a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.

3.     The Bancorp Bank, a wholly-owned subsidiary of The Bancorp, is a federally-regulated financial institution headquartered in Delaware.

4.     Upon information and belief, CC-Defendant is a resident of New York, New York.

5.     CC-Defendant became an at-will employee of The Bancorp in September 2015.

6.     In his offer letter from The Bancorp, CC-Defendant was informed that his employment as a Senior Vice President and Head of Commercial Mortgage Backed Securitization Floating Rate Program could be terminated without cause or notice.

7.     In connection with his employment, CC-Defendant was issued a corporate American Express credit card ("Corporate Card") to be used only for business expenses.

8.     Also in connection with his employment, CC-Defendant signed an employee Handbook which delineated rules he must follow as an at-will employee of The Bancorp, including a Code of Ethics.

9.     The Handbook and the Code of Ethics prohibited the use of the Corporate Card for personal purchases.

10.    CC-Defendant at all times knew that he was permitted to only charge business expenses to his Corporate Card.

11.    As least as early as January 2016, CC-Defendant began to charge personal expenses to his Corporate Card.

12.    CC-Defendant never wrote a check to The Bancorp to cover the cost of the personal expenses.

13.    CC-Defendant also failed to submit expense reports for charges made to his Corporate Card that were for legitimate business purposes as required by The Bancorp's policies.

14.    Throughout 2016 and early 2017, CC-Defendant continued to grossly misuse his Corporate Card by running up the account with charges to cover his personal affairs, including but not limited to for charges for his personal tax returns; rental cars and dinners in Spain while on vacation; merchandise purchases at Bergdorf Goodman; the cost of multiple Google "Playrix" games and Apple apps; purchases at eyeglass and contact lens retailers; his personal utility bills; and numerous restaurant, Uber, and hotel bills for weekend getaways or times when CC-Defendant was on vacation.   CC-Defendant never submitted expense reports for these items, nor did he provide any payment to The Bancorp to reimburse it for the charges.

12

15.    By using his Corporate Card for personal purchases, CC-Defendant was improperly misusing the card.

16.    By charging items to his Corporate Card, CC- Defendant was representing to The Bancorp that the charges made to the card were for business purposes.

17.    By failing to reimburse The Bancorp for personal expense charges made to the Corporate Card, CC-Defendant was concealing from The Bancorp that the charges were not for business purposes.

18.    Through 2016 and early 2017, The Bancorp continued to pay the balance of the Corporate Card, relying on CC-Defendant's representation implicit in the use of the card that the charges were for business purposes, and CC-Defendant's failure to reimburse The Bancorp for personal expenses.

19.    CC-Defendant knew that he was improperly misusing his Corporate Card.

20.    In February 2017, The Bancorp unveiled a revised Travel and Expense Policy ("T&E Policy") to which company employees including CC-Defendant would be required to adhere.

21.    The T&E Policy provided that travel, entertainment, and conference-related expenses needed to be approved by a manager.

22.    The T&E Policy also required employees to submit expense reports at the end of each month in which a trip was taken, not to exceed 30 days, and noted that employees seeking reimbursement should "exercise care to avoid impropriety or the appearance of impropriety."

23.    The T&E Policy further specified that employees would be required to fully reimburse The Bancorp for expenses later deemed to be unapproved.

24.    In connection with the new policy, employees were given ten business days to submit any outstanding expenses incurred prior to the enactment of the T&E Policy.

25.     CC-Defendant was notified that The Bancorp had now discovered that several of his 2016 Corporate Card charges appeared to be for non-business purposes, and was provided with a spreadsheet detailing the charges for which he had yet to submit expense reports that now totaled approximately $70,793.

26.     CC-Defendant was given ten days to submit expense reports for the outstanding charges, substantiate the charges as for business purposes, and reimburse The Bancorp for any personal charges.

27.     In response to the notification that The Bancorp had discovered his personal charges, CC-Defendant admitted that he had put over $2,000 in charges for personal expenses on his Corporate Card, but did not submit any expense reports.

28.     In the ten days following The Bancorp's notification to CC-Defendant of his obligations with respect to his Corporate Card, CC-Defendant failed to provide expense reports explaining the over $70,000 in charges on his Corporate Card despite repeated requests to do so, and also failed to issue any payment to The Bancorp to cover the over $2,000 in personal expenses he himself identified by that point.

29.     Violating The Bancorp's Handbook, Code of Ethics, and T&E Policy by knowingly charging personal expenses to The Bancorp Corporate Card is grounds for termination of employment for cause.

30.     CC-Defendant's violation of The Bancorp's Handbook, Code of Ethics, and T&E Policy by knowingly charging personal expenses to his Corporate Card constituted cause for his termination.

31.     On March 8, 2017, The Bancorp terminated CC-Defendant for cause because he had violated its policies related to the Corporate Card and because he had fraudulently charged

thousands of dollars in personal expenses to his Corporate Card for which he failed to reimburse The Bancorp.

32.     In April 2017, CC-Defendant admitted to The Bancorp that he had put over $8,500 in personal expenses on his Corporate Card, but still failed to provide expense reports for any of the remaining unexplained charges.

33.     CC-Defendant has on numerous occasions admitted to other employees of The Bancorp that he charged personal expenses to his Corporate Card.

34.     As a result of CC-Defendant's fraudulent use of his The Bancorp Corporate Card, The Bancorp has paid approximately $70,793 to cover CC-Defendant's Corporate Card balance for his fraudulently-charged personal expenses.

## FIRST COUNTERCLAIM:
### (Fraud)

35.     The Bancorp repeats each and every allegation contained Paragraphs 1 through 34 as if fully set forth here.

36.     CC-Defendant was issued a Corporate Card by The Bancorp, which he understood was to be used only for business expenses.

37.     In connection with his use of the Corporate Card, CC-Defendant had a duty to submit expense reports to account for his charges on the card, to use his Corporate Card only for business expenses, and to alert and reimburse The Bancorp for accidental personal charges on his Corporate Card.

38.     CC-Defendant repeatedly made charges to his Corporate Card for items that were not for business purposes throughout 2016 and early 2017.

39.     At no time did CC-Defendant submit expense reports to The Bancorp from January 2016 through February 2017, nor did he reimburse CC-Defendant for the personal expense charges to his Corporate Card.

40.     By making charges to his Corporate Card in the first instance, CC-Defendant misrepresented to The Bancorp the material fact that such purchases were for legitimate business purposes.

41.     By failing to submit expense reports, alert The Bancorp that the charges were personal, or reimburse The Bancorp, CC-Defendant was further omitting to The Bancorp the material fact that his personal expense charges to the Corporate Card were not for business purposes.

42.     At the time CC-Defendant made personal charges to his Corporate Card, he was aware of The Bancorp's policies prohibiting this type of use.

43.     At the time CC-Defendant made personal charges to his Corporate Card, CC-Defendant was further aware that by making personal expense charges to the Corporate Card in the first instance, he was falsely representing to The Bancorp that the charges were for business purposes.

44.     At the time CC-Defendant made personal charges to his Corporate Card, CC-Defendant was further aware that by making the personal expense charges to the Corporate Card and failing to ever alert The Bancorp about them or reimburse The Bancorp for them, he was falsely representing to The Bancorp that the charges were for business purposes.

45.     By making personal expense charges on his Corporate Card and refusing to submit expense reports or reimburse The Bancorp for any of the charges, CC-Defendant intended to defraud The Bancorp into paying for his personal expenses.

46.     From 2016 through February 2017, The Bancorp paid the balance of CC-Defendant's Corporate Card relying on CC-Defendant's representations and omissions that the charges on the card were only for business expenses.

16

47.     The Bancorp has been damaged as a result of its reliance on CC-Defendant's misuse of the Corporate Card, his failure to submit expense reports, his failure to reimburse The Bancorp for any of the personal expense charges to his Corporate Card, and his continued refusal to reimburse The Bancorp for any of his personal expenses.

48.     CC-Defendant's actions were willful, wanton, and undertaken with malice subjecting him to punitive damages in the amount to be determined, but no less than $5 million.

## SECOND COUNTERCLAIM
### (Equitable Forfeiture/Faithless Servant Doctrine)

49.     The Bancorp repeats each and every allegation contained Paragraphs 1 through 48 as if fully set forth here.

50.     As an employee, CC-Defendant owed a duty of good faith and loyalty to his employer, The Bancorp.

51.     CC-Defendant was prohibited from acting in any manner that was inconsistent with the services he was supposed to be providing to The Bancorp, and had an affirmative duty at all times to act in The Bancorp's best interests.

52.     Throughout his employment between 2016 and 2017, CC-Defendant deliberately and repeatedly charged personal expenses to his Corporate Card, failed to submit required expense reports, and failed to reimburse The Bancorp for the expenses.

53.     CC-Defendant breached his duty of good faith and loyalty to The Bancorp by fraudulently and deliberately charging personal expenses to his Corporate Card in violation of The Bancorp's Code of Ethics and T&E Policy, and failing to reimburse The Bancorp for those expenses.

54.     As a consequence of CC-Defendant's breach of his duty of loyalty and good faith, The Bancorp is entitled to a judgment against CC-Defendant for the return of $70,793 in personal expenses that CC-Defendant charged to his Corporate Card for which The Bancorp subsequently

paid, and such portion of his salary received in 2016 and 2017 as may be determined at trial, together with all appropriate interest.

## THIRD COUNTERCLAIM
(Conversion)

55.     The Bancorp repeats each and every allegation contained Paragraphs 1 through 54 as if fully set forth here.

56.     CC-Defendant has exercised dominion and control over The Bancorp funds and assets, including assets obtained as a result of his improper use of his Corporate Card.

57.     CC-Defendant converted The Bancorp funds when he caused them to be diverted to pay for CC-Defendant's personal expenses he charged to his Corporate Card, thereby depriving The Bancorp of the use of those funds in the specific and identifiable amount of $70,793.

58.     CC-Defendant was only to have used his Corporate Card for business expenses but he deliberately and repeatedly used it for personal expenses.

59.     As a result of CC-Defendant's conduct, The Bancorp has not had use of the funds which it was forced to instead pay to American Express to cover CC-Defendant's balance of his Corporate Card.

60.     CC-Defendant's misuse of The Bancorp funds by deliberately charging personal expenses to his Corporate Card and his failure to reimburse the company for these expenses was, and continues to be, willful and deliberate.

61.     As a result of CC-Defendant's conversion of The Bancorp funds, The Bancorp is entitled to a judgment against CC-Defendant in the amount of $70,793, together will all appropriate interest, and punitive damages in the amount to be determined, but no less than $5 million.

## FOURTH COUNTERCLAIM
### (Unjust Enrichment)

62.     The Bancorp repeats each and every allegation contained Paragraphs 1 through 61 as if fully set forth here.

63.     CC-Defendant, a former employee of The Bancorp, has been enriched because he repeatedly charged personal expenses to his Corporate Card, forcing The Bancorp to pay the balance on the card at its own expense.

64.     The Bancorp has been damaged as a result of having to pay CC-Defendant's Corporate Card balance, which included charges for personal expenses.

65.     Equity and good conscience require that CC-Defendant be required to return the amount of the charged personal expenses to The Bancorp in the amount of $70,793 because he has failed to reimburse The Bancorp for these expenses, and The Bancorp has had to pay its own funds to cover the balance of the Corporate Card as a result.

## FIFTH COUNTERCLAIM
### (Breach of Fiduciary Duty)

66.     The Bancorp repeats each and every allegation contained Paragraphs 1 through 65 as if fully set forth here.

67.     In his employment as a Senior Vice President and Head of Commercial Mortgage Backed Securitization (CMBS) Floating Rate Program at The Bancorp, CC-Defendant held a position of trust at The Bancorp.

68.     In his employment as a Senior Vice President and Head of Commercial Mortgage Backed Securitization (CMBS) Floating Rate Program at The Bancorp, CC-Defendant had a duty to act in the best interest and for the benefit of The Bancorp.

69.     CC-Defendant breached his fiduciary duty by using his Corporate Card to charge personal expenses and failing to reimburse The Bancorp for those personal charges.

70.     As a result of CC-Defendant's breach of his fiduciary duty, The Bancorp has suffered damages in the amount of $70,793, together will all appropriate interest.

71.     CC-Defendant's conduct was willful, deliberate, and accompanied by fraud, warranting punitive damages in the amount to be determined, but no less than $5 million.

WHEREFORE, The Bancorp demands as follows:

1. Dismissal of Plaintiff's Amended Complaint, and each and every cause of action contained therein;

2. Judgment on The Bancorp's Counterclaims as follows:

   a. On the First Counterclaim, damages in an amount to be determined at trial, together with all appropriate interest, and punitive damages in the amount to be determined, but no less than $5 million;

   b. On the Second Counterclaim, for the return of $70,793 and such portion of his salary received in 2016 and 2017 as may be determined at trial, together with all appropriate interest;

   c. On the Third Counterclaim, for conversion in the amount of $70,793, together with all appropriate interest, and punitive damages in the amount to be determined, but no less than $5 million;

   d. On the Fourth Counterclaim, for unjust enrichment in the amount of $70,793, together with all appropriate interest;

   e. On the Fifth Counterclaim, for breach of fiduciary duty in the amount of $70,793, together with all appropriate interest, and punitive damages in the amount to be determined, but no less than $5 million;

f.  The Bancorp's reasonable attorneys' fees, costs, and expenses incurred in this action; and

g.  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 17, 2017

COZEN O'CONNOR
Attorneys for Defendant

By:  */s/ Michael C. Schmidt*
     Michael C. Schmidt (MS7841)
     Jennifer Queliz (JQ0512)
     277 Park Avenue
     New York, New York 10172
     (212) 453-3937