MICHELMAN & ROBINSON, LLP
Richard M. Reice
(rreice@mrllp.com)
Janeen R. Hall
(jhall@mrllp.com)
800 Third Avenue, 24th Floor
New York, New York 10022
Tel.: (212) 730-7700
Fax: (212) 730-7725
*Attorneys for Plaintiff Robert M. Cestari*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ROBERT M. CESTARI, | : : : | |
| Plaintiff, | : : | Case No.: 17-CV-4054 (VM) (DCF) |
| -against- | : : | TRIAL DATE: JUNE 10, 2019 |
| THE BANCORP, INC., | : : : | |
| Defendant. | : : | |

-----------------------------------------------------------

**PRE-TRIAL MEMORANDUM OF PLAINTIFF ROBERT M. CESTARI**

# TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................................1
    A. Plaintiff's Time as a Consultant with The Bancorp ................................................1
    B. Plaintiff Becomes a Department Head ....................................................................2
    C. Cohen Promises Compensation on Two Loan Deals ..............................................3
    D. Termination .............................................................................................................4

II. LEGAL STANDARDS ......................................................................................................5
    A. Failure to Pay Wages and Breach of Contract .........................................................5
    B. Defamation Per Se ...................................................................................................6
    C. Tortious Interference with Business Relations ........................................................7
    D. Defendant's Counterclaims ......................................................................................7
        a. Fraud ............................................................................................................7
        b. Equitable Forfeiture/Faithless Servant ........................................................7
        c. Conversion ...................................................................................................8
        d. Breach of Fiduciary Duty ............................................................................8
        e. Unjust Enrichment .......................................................................................9

III. ISSUES TO BE TRIED .....................................................................................................9

IV. CONCLUSION ................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Apple Mortgage Corp. v. Barenblatt*,
  162 F. Supp. 3d 270 (S.D.N.Y. 2016) ....................................................................................... 8

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016) ....................................................................................... 7

*Braun v. CMGI, Inc.*,
  64 Fed. App'x 301 (2d Cir. 2003 ............................................................................................. 6

*Celle v. Filipino Reporter Enterprises Inc.*,
  209 F.3d 163 (2d Cir. 2000) ...................................................................................................... 7

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ...................................................................................................... 8

*Digizip.com, Inc. v. Verizon Services Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015) ....................................................................................... 9

*Lightbox Ventures, LLC v. 3rd Home Limited*,
  No. 16 Civ. 2379 (DLC), 2017 WL 5312187 (S.D.N.Y., Nov. 13, 2017) ................................ 9

*Mid Atlantic Framing, LLC v. AVA Realty Ithaca, LLC*,
  No. 13 Civ. 1376 (MAD) (DEP), 2018 WL 1605567 (N.D.N.Y., Mar. 29, 2018) ................... 8

*Mobarak v. Mowad*,
  117 A.D.3d 998, 1001 (2d Dept 2014) ..................................................................................... 9

*Musico v. Champion Credit Corporation*,
  764 F.2d 102 (2d Cir. 1985) ...................................................................................................... 8

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
  208 F.3d 368, 382 (2d Cir. 2000) .............................................................................................. 7

*National Liability & Fire Insurance Co. v. Rick's Marine Corp.*,
  268 F. Supp. 3d 371 (E.D.N.Y. 2017) ...................................................................................... 8

*Peters v. Baldwin Union Free Sch. Dist.*,
  320 F.3d 164 (2d Cir. 2003) ...................................................................................................... 7

*Phansalkar v. Andersen Weinworth & Co. L.P.*,
  344 F.3d 184 (2d Cir. 2003) ...................................................................................................... 8

*Yesner v. Spinner*,
  765 F. Supp. 48 (E.D.N.Y. 1991 ............................................................................................... 7

**State Statutes**

New York Labor Law

§ 191 ..........................................................................................................................6
§ 193 ..........................................................................................................................6
§ 190(6) .....................................................................................................................6
§ 198 (1-a) .................................................................................................................6

Plaintiff Robert M. Cestari ("Plaintiff" or "Cestari") submits this pre-trial memorandum to address all issues to be tried and authorities relied upon in the presentation of his case. In this action, Plaintiff claims Defendant The Bancorp, Inc. ("Defendant" or "The Bancorp") failed to pay him earned commissions and vested bonus amounts, defamed him and tortuously interfered with his ability to obtain other employment following his termination.

## I.   BACKGROUND

**A.   Plaintiff's Time as a Consultant with The Bancorp**

Plaintiff began his relationship with The Bancorp in 2012, when he was retained as a part-time consultant. Prior to working for The Bancorp, Plaintiff worked as a consultant at a securities firm, Cohen and Company, managed by Daniel Cohen, Chairman of The Bancorp ("Cohen"), and his mother, Betsey Cohen. In 2013, Cohen and Ms. Cohen moved to The Bancorp. Sometime thereafter, Plaintiff approached Cohen and his mother about starting a floating-rate securitization program at The Bancorp. At that time, The Bancorp was making ten-year fixed rate loans under the leadership of Ronald Wechsler ("Wechsler").

In 2014, Plaintiff became a full-time consultant for The Bancorp where, at the time, Ms. Cohen was the CEO. Plaintiff became a consultant instead of an employee because Cohen suggested it would be easier to pay Plaintiff in the context of a deal and for raising equity. Within this pay structure, Plaintiff understood that he would be compensated what he felt he earned when a transaction closed for his work on that particular deal. During his time as a full-time consultant, Plaintiff earned a base salary of $300,000, plus periodic bonuses. His compensation structure was not memorialized in a written agreement. He was paid a set amount on a monthly basis and negotiated the terms of his compensation with Cohen. Plaintiff also received a bonus for work on a specific transaction, the Walnut Street transaction, which involved work outside the normal scope

1

of his duties as a consultant. Specifically, Plaintiff received $50,000.00 in 2015 for the Walnut Street transaction, and additional payments in 2015 and 2016 for related work.

**B.     Plaintiff Becomes a Department Head**

In September 2015, Plaintiff transitioned to being a full-time employee, with a base salary of $300,000.00. In addition to his base salary, Plaintiff earned a $75,000.00 sign-on bonus and was eligible to receive incentive compensation based on the success of the Commercial Real Estate Commercial Loan Origination ("CRE CLO") program. Plaintiff's title was Senior Vice President and Head of Commercial Banking Mortgage Backed Securitization, Floating Rate Program. In that role, Plaintiff was tasked with developing The Bancorp's floating rate business and originating a portfolio of those types of loans in order to securitize them and realize profits.

Plaintiff was an exemplary employee for The Bancorp. As a result of his performance, Plaintiff was promised bonus amounts on multiple occasions, which he never received. For example, Plaintiff was tasked with issuing a securitization of certain loans for the CLO program to be issued in or about July 2015. However, as a result of Defendant's paperwork delays and market changes, Plaintiff was unable to issue the securitization on favorable terms. Yet, The Bancorp assured Plaintiff that would not negatively impact him or his bonus. Still, Plaintiff only received approximately $200,000.00 of the $400,000.00 bonus he was promised and earned. Plaintiff also never received a $75,000.00 retention bonus that was to be paid in December 2016.

In or around December 2016, The Bancorp, through Cohen, promised Plaintiff he would receive a bonus of approximately $800,000.00 because of the significant value he added, bringing his total compensation to approximately $1.1 million. However, in February 2017, Plaintiff was only paid $200,000.00 of his 2016 bonus in cash, and another $200,000.00 in the form of a stock grant of 39,525 shares. Plaintiff therefore only received approximately half of his promised performance bonus. Plaintiff was told by Cohen that the first half of the bonus was paid from the

executive bonus pool, and he would receive the other $400,000.00 from the real estate bonus pool in March 2017. Plaintiff never received the remaining portion of his 2016 bonus.

C.     **Cohen Promises Compensation on Two Loan Deals**

From the inception of his employment, Plaintiff understood that from time to time, Cohen would approach him with side projects he wanted Plaintiff to complete outside of his role as head of the Floating Rate Program. Cohen made two distinct promises to Plaintiff regarding payment of commissions for work outside the regular scope of Plaintiff's position.

The first promise arose out of a desire by The Bancorp to sell loans in a securitization of fixed-rate assets in the summer of 2016. Cohen asked Plaintiff to step in and assist the fixed-rate program (which was led by Wechsler). Prior to Plaintiff's involvement, Wechsler had been unable to complete fixed-rate asset sales. As an incentive to work outside of his normal responsibilities in the floating rate department, Cohen offered Plaintiff a forty percent (40%) commission of any excess profit The Bancorp would receive in connection with a sale. Plaintiff worked with his contacts at Wells Fargo Bank to complete the sale in a securitization of assets (the "Wells Fargo Securitization"). The Bancorp netted a profit of $2.4 million above the two points The Bancorp expected to receive, entitling Plaintiff to a commission of approximately $600,000.00.

The second transaction for which Cohen promised to pay Plaintiff involved a fixed rate portfolio sale in early 2017 (the "Fixed Rate Portfolio Sale"). The Bancorp desired to leave the fixed-rate market and dispose of its remaining fixed-rate loans. Again, Wechsler was unable to complete the sale, and Cohen asked for Plaintiff's assistance. Cohen promised Plaintiff he would be paid half a point as a broker's fee on the Fixed Rate Portfolio Sale. Plaintiff arranged for the sale of The Bancorp's fixed rate portfolio (valued at approximately $143 million) to an investment company named Silverpeak, entitling Plaintiff to a commission of approximately $500,000.00. To date, The Bancorp has refused to pay Plaintiff's earned commissions for the Wells Fargo

3

Securitization and the Fixed Rate Portfolio Sale. Tellingly, The Bancorp also failed to pay originator Jonathan Kohan commissions owed to him as promised by Cohen for his work on the Fixed Rate Portfolio Sale.

**D.    Termination**

Rather than pay Plaintiff his vested bonus amounts or earned commissions, The Bancorp terminated Plaintiff on March 8, 2017, and provided a false basis for his termination. In June 2016, The Bancorp hired a new CEO, Damian Kozlowski ("Kozlowski"), after going through a series of interim CEOs. At the time of Kozlowski's appointment through Plaintiff's termination, Cohen remained Chairman of The Bancorp. In January and February 2017, and during the weeks leading up to Plaintiff's termination, The Bancorp downsized, which included layoffs of several employees. The Bancorp also conducted a review of large earners and the outstanding amounts owed to them and reorganized certain departments, including the CRO group (of which Wechsler became department head).

The Bancorp discharged Plaintiff for using his company-issued American Express credit card (the "AMEX") to make purported unauthorized personal purchases. Since receiving the AMEX, Plaintiff had, on occasion, used the card to make personal purchases without issue or disturbance. From time to time, Matthew Sowa, an employee in The Bancorp's accounting department, would notify Plaintiff of his personal charges and ask Plaintiff to write a check to reimburse The Bancorp. On at least one occasion, Plaintiff wrote such a check, which The Bancorp claims it never received. Plaintiff was never instructed by accounting or any other department within The Bancorp that "personal use" of the AMEX was against the rules and was never reprimanded. Furthermore, The Bancorp's policy documents do not state that corporate cards cannot be used for personal expenses, and the only consequence for any abuse of a corporate card is loss of card privileges.

On February 21, 2017, Plaintiff was contacted about his personal charges to the AMEX. In a February 27 email, Plaintiff offered to provide The Bancorp with a check. On or about February 28, Plaintiff was told he had approximately ten (10) days to reimburse personal charges. He was terminated on March 8, before the deadline expired. Up until his termination, Plaintiff was actively engaged in attempting to reconcile his personal and business expenses. However, Plaintiff was given barely a week to provide reimbursement for his personal charges before he was terminated.

After his termination, Plaintiff began looking for another position. Although he had thought he had success in achieving a similar position with Oaktree Capital Management, Plaintiff learned that at some point in or around May 2017, Wechsler contacted Oaktree employees and informed them that Plaintiff has been terminated for cause based on the purported misuse of his AMEX card, which information was false. Wechsler also contacted others in the financial industry and shared the same information. According to Wechsler, false information about Plaintiff was spread to the financial industry and Oaktree to separate The Bancorp from Plaintiff. As a result of Wechsler's conduct, Plaintiff was not offered a position at Oaktree and could not readily find other employment.

## II. LEGAL STANDARDS

### A. Failure to Pay Wages and Breach of Contract

In Counts One through Three of the Amended Complaint, Plaintiff alleges breach of contract, failure to pay commissions, and failure to pay vested bonus amounts. As this Court correctly pointed out in its Decision denying Defendant's request to file a motion for summary judgment, resolution of Plaintiff's first three claims depends on "whether Plaintiff and Cohen entered into valid oral contracts for the payment to Cestari of a bonus and two transaction-specific commissions." *See* Doc. No. 47 at 15. As the law of the case, four factors determine whether an

oral agreement has a binding effect: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been agreed to; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *Id* (citing *Braun v. CMGI, Inc.*, 64 Fed. App'x 301 (2d Cir. 2003)).

Furthermore, Plaintiff specifically pursues his failure-to-pay claims under the New York Labor Law. With respect to Defendant's fixed-rate loan program, Plaintiff was a "commissioned salesman," as defined in New York Labor Law § 190(6), because his principal activity under that program was to sell loans and facilitate the securitization of fixed-rate loans, and his earnings for both the Wells Fargo Securitization and the Fixed Sale Portfolio were based at least in part on commissions. The Bancorp willfully refused to pay Plaintiff his earned commissions on either transaction, and willfully refused to pay Plaintiff the remainder of his 2016 bonus and December 2016 retention bonus in violation of New Labor Law §§ 191 and 193.

Under the New York Labor Law, when an employer refuses to pay an employee, the employee is entitled to recover the full amount of any underpayment, all reasonable attorneys' fees and prejudgment interest as liquidated damages equal to one hundred percent (100%) of the total amount of the wages found to be due, and, where such refusal to pay is willful, up to three hundred (300%) of the total amount of wages found to be due. *See* New York Labor Law. § 198 (1-a)

**B.   Defamation Per Se**

Plaintiff's fourth count is defamation per se. Under New York Law, the following elements constitute a defamation claim: (1) a false statement; (2) published without privilege or authorization to a third party; (3) constituting fault; and (4) which must either cause special harm or constitution defamation per se. Doc. No. 47 at 23 (citing *Peters v. Baldwin Union Free Sch.*

*Dist.*, 320 F.3d 164, 169 (2d Cir. 2003)). As a general rule, defamatory statements that directly attack the business, trade or profession of a plaintiff is considered defamation per se. *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 180 (2d Cir. 2000) (citing *Yesner v. Spinner*, 765 F. Supp. 48, 52 (E.D.N.Y. 1991) (defamation per se is actionable without any proof of special damages)).

### C.     Tortious Interference with Business Relations

Plaintiff's fifth and final count is tortious interference with business relations. Four elements are required to establish this claim: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship. Doc. No. 47 at 28 (citing *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000)).

### D.     Defendant's Counterclaims

Regarding Plaintiff's expenses and use of the AMEX card, Defendant brings five counterclaims, which standards are set out below:

#### a.     Fraud

To prove common law fraud under New York law, Defendant must show: (1) a material false statement or omission; (2) made with knowledge of its falsity; (3) with an intend to defraud; and (4) reasonable reliance on the part of Defendant; (5) that causes damage to Defendant. *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182 (S.D.N.Y. 2016).

#### b.     Equitable Forfeiture/Faithless Servant

Equitable forfeiture, also known as the "faithless servant doctrine" in New York, permits an employer to recover an employee's compensation where the employee is shown to have been

7

disloyal in the performance of his services. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006).

However, in cases where an employee earned both a salary and commissions, the Second Circuit has held that an employee may be compelled to forfeit his salary during the purported period of disloyalty, but is not required to forfeit any commissions because the employee's disloyalty did not arise in connection with any transaction from which he was entitled to receive a commission, "nor did it taint or interfere with the completion of any sales in relation to which he receive a commission." *Id* (citing *Phansalkar v. Andersen Weinworth & Co. L.P.*, 344 F.3d 184 at 205; *Musico v. Champion Credit Corporation*, 764 F.2d 102 at 114) (internal quotations omitted).

### c.  Conversion

To recover damages for conversion, Defendant must show: (1) legal ownership or an immediate right of possession to a specific identifiable thing, and (2) that Plaintiff exercised an *unauthorized* dominion over the thing in question to the exclusion of Defendant's right. *National Liability & Fire Insurance Co. v. Rick's Marine Corp.*, 268 F. Supp. 3d 371 (E.D.N.Y. 2017) (emphasis added); *see also Apple Mortgage Corp. v. Barenblatt*, 162 F. Supp. 3d 270 (S.D.N.Y. 2016) (same).

### d.  Breach of Fiduciary Duty

To recover damages for breach of fiduciary duty, Defendant must prove: (1) the existence of a fiduciary relationship; (2) misconduct by Plaintiff; and (3) damages directly caused by Plaintiff's misconduct. *Mid Atlantic Framing, LLC v. AVA Realty Ithaca, LLC*, No. 13 Civ. 1376 (MAD) (DEP), 2018 WL 1605567, at *15 (N.D.N.Y., Mar. 29, 2018); *see also Lightbox Ventures, LLC v. 3rd Home Limited*, No. 16 Civ. 2379 (DLC), 2017 WL 5312187, at *13 (S.D.N.Y., Nov. 13, 2017).

   e. **Unjust Enrichment**

To recover damages for unjust enrichment, Defendant must show: (1) Plaintiff was enriched; (2) at Defendant's expense; and (3) that it is against equity and good conscience to permit Defendant to retain what is sought to recovered. *Digizip.com, Inc. v. Verizon Services Corp.,* 139 F. Supp. 3d 670 (S.D.N.Y. 2015) (citing *Mobarak v. Mowad*, 117 A.D.3d 998, 1001 (2d Dept 2014)).

### III.   ISSUES TO BE TRIED

On his breach of contract and failure to pay wages claims, Plaintiff will prove that The Bancorp promised to pay Plaintiff a bonus of $75,000.00 in December 2016. Upon information and belief, the Bancorp will try to argue that Plaintiff forfeited this amount because he was terminated for cause. However, Plaintiff will prove that The Bancorp's reason for terminating Cestari was pretextual and fabricated to avoid paying Plaintiff his earned wages. Plaintiff will also prove, that The Bancorp, through Cohen in his capacity as Chairman, promised to pay Plaintiff an $800,000.00 bonus for his 2016 performance, but instead only paid Plaintiff approximately half of the amount promised. Plaintiff will further prove that The Bancorp, through Cohen, made two clear, unambiguous, bilateral and binding oral contracts to pay Plaintiff commissions for the Wells Fargo Securitization and the Fixed Rate Portfolio Sale. However, The Bancorp breached those oral contracts by refusing to the commissions, entitling Plaintiff to actual and compensatory damages in an amount to be determined at trial, but not less than $1.1 million. The Bancorp's failure to pay Plaintiff his earned bonus amounts and commissions violates the New York Labor Law, entitling Plaintiff to liquidated damages in an amount not less than $475,000.00.

On his claims for defamation per se and tortious interference with business relations, Plaintiff will prove that Wechsler, in his capacity as head of the CRO group at The Bancorp, disseminated false information regarding the fabricated reason Plaintiff was terminated to

Plaintiff's prospective employer, Oaktree, and other players in the financial industry. Wechsler's conduct, carried out in the scope of his employment, impeded Plaintiff from readily obtaining subsequent employment, stained his reputation in the financial industry and caused him significant damage, entitling him to actual, compensatory and punitive damages in the amount of no less than $700,000.00.

With respect to Defendant's counterclaims concerning Plaintiff's use of the AMEX card, Plaintiff does not dispute that on occasion, he used his AMEX for personal charges. However, Plaintiff maintains that his use of the AMEX did not violate company policy and he at all times intended to reimburse The Bancorp. Furthermore, many of the expenses The Bancorp claims were personal were in fact business expenses. Plaintiff will therefore argue that The Bancorp is entitled to an amount to offset his damages, in an amount not to exceed $9,000.00.

## IV.     CONCLUSION

Wherefore, Plaintiff Robert M. Cestari will present the foregoing claims and defenses at a jury trial to commence on June 10, 2019, before the Honorable Victor Marrero of the United States District Court, Southern District of New York.

Dated: May 17, 2019

**MICHELMAN & ROBINSON, LLP**

By: /s:/ Richard M. Reice
Richard M. Reice
Janeen R. Hall
800 Third Avenue, 24th Floor
New York, New York 10022
Tel.: (212) 730-7700
Fax: (212) 730-7725
rreice@mrllp.com
jhall@mrllp.com